IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ERIC P. FIEDLER, M.D.,** : | **CIVIL ACTION NO. 1:13-CV-2737** |
| : | |
| **Plaintiffs,** : | **(Chief Judge Conner)** |
| : | |
| v. : | |
| : | |
| **SHADY GROVE REPRODUCTIVE** : | |
| **SCIENCE CENTER, P.C., t/a** : | |
| **SHADY GROVE FERTILITY** : | |
| **CENTERS**, *et al.*, : | |
| : | |
| **Defendants.** : | |

## **MEMORANDUM**

Presently before the court in the above-captioned matter is the motion (Doc. 23) of defendants Shady Grove Reproductive Science Center, P.C., ("SG Science Center"), and Shady Grove Fertility Center of Pennsylvania, PLLC, ("SG Fertility Center"), collectively "Shady Grove," to dismiss the complaint (Doc. 20) of plaintiff Eric P. Fiedler, M.D., ("Fiedler"), which seeks relief in equity against Shady Grove for fraudulent or intentional misrepresentation and defamation. For the reasons that follow, the court will grant Shady Grove's motion.

**I.      Procedural Background**[1]

Fiedler commenced this civil action by filing a document styled as a verified petition for preliminary injunction in the Court of Common Pleas for Cumberland County, Pennsylvania, on October 10, 2013. (Doc. 1 ¶ 1). Shady Grove timely filed a

---

[1] The court and parties are familiar with the unconventional procedural course charted in this matter. As such, the court recites only the most pertinent procedural background herein.

notice of removal (Doc. 1) to this court on November 7, 2013, pursuant to 28 U.S.C. § 1446.  On November 11, 2013, Fiedler moved to remand the action to state court.  (Doc. 3).  The court denied Fiedler's motion by order dated January 14, 2014, concluding that Shady Grove's Maryland residence and Fiedler's Pennsylvania residence satisfy the diversity jurisdiction requirements of 28 U.S.C. § 1332(a)(1).  (Doc. 14).  Pursuant to mutual agreement of the parties stipulated by letter (Doc. 18) dated January 28, 2014, the court dismissed Fiedler's petition for injunctive relief as moot and directed Fiedler to file a complaint and, to the extent applicable, a motion for a preliminary injunction on or before February 24, 2014.  (Doc. 19).

On February 11, 2014, Fiedler filed the instant complaint (Doc. 20), asserting claims for fraudulent and intentional misrepresentation (Count I) and defamation (Count II) against Shady Grove.  Shady Grove moved to dismiss both counts of the complaint on April 14, 2014.  (Doc. 23).  The motion is fully briefed, (Docs. 24-26), and this matter is ripe for disposition.

## II.    Standard of Review

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a

claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When the complaint fails to present a prima facie case of liability, however, courts should generally grant leave to amend before dismissing a complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116–17 (3d Cir. 2000).

### III. Material Facts

Fiedler is a fellowship-trained and board-certified physician specializing in the field of reproductive endocrinology and fertility.  (Doc. 20 ¶ 1).  At all relevant times, Fiedler operated both the Advanced Center for Infertility and Reproductive Medicine, an infertility and reproductive medicine practice (the "clinical practice"); the Center for Reproductive Surgery, LLC, an ambulatory surgical center; and an *in vitro* fertilization ("IVF") and embryology laboratory, one of two laboratories under Central Penn Reproductive Laboratory, LLC.  (See id. ¶ 1 & nn. 1-3).  SG

Science Center is a Maryland professional corporation which operates fertility and reproductive care clinics throughout Maryland, Virginia, and Washington, D.C. (Id. ¶ 2). SG Fertility Center is a Pennsylvania limited liability company operating four fertility and reproductive care clinics throughout Pennsylvania. (Id.) SG Science Center is the sole member of SG Fertility Center.[2] (Id.)

The instant dispute arises from Shady Grove's alleged misrepresentations regarding Fiedler's embryonic cryopreservation practices, specifically Fiedler's record-keeping practices. Fiedler describes his record-keeping process as follows:

> For cryopreservation of embryos in Dr. Fiedler's laboratory, straws (to contain embryos), a goblet (to contain straws), and a cane (to hold goblets), which were all unique for that patient, were labeled, as follows:
>
> Straw: MR#, straw number, number of embryos in that straw, date frozen.
> Goblet: name, MR#, date frozen (initial).
> Cane: number.
>
> The embryos were then transferred into the straws, typically 1 to 3 embryos per straw. The straws were frozen in liquid nitrogen and placed into the goblet, which clicked onto the cane. The cane was placed into a plastic sleeve that prevents the goblets from dislodging from the cane. The case was placed in a canister (not unique to the patient), which was numbered by the manufacturer, and stored in a tank, which was also numbered.

---

[2] As the court has previously held, (see Doc. 14), the fact that plaintiff Fiedler and defendant SG Fertility Center are both Pennsylvania residents does not destroy the court's diversity jurisdiction. The citizenship of a limited liability company is determined by the citizenship of its members. See Zembelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 420 (3d Cir. 2010). Hence, both Shady Grove defendants are citizens of Maryland for purposes of establishing diversity, and the jurisdictional requirements of 28 U.S.C. § 1332(a)(1) are satisfied.

> Along with labeling the straw, goblet and cane, an Embryo Inventory Card [("EIC")] was recorded as follows: the patient's name and MR#; straw numbers, and for each straw number: number of embryos in that straw, date frozen (with type of IVF and developmental day); cane number; canister number; and tank number.

(Id. ¶¶ 3-4). Fiedler also utilized IVF Outcome Reports ("IORs"), which were maintained in his patients' charts in his clinical practice office and not in Fiedler's laboratory. (Id. ¶ 6). The IORs tracked the progression of embryonic development for purposes of planning uterine transfer. (Id.) According to Fiedler, any error in documentation on an IOR "would not equate to a mislabeling of embryos or an error in the inventory of cryopreserved embryos" because labeling and inventory occurred in the laboratory and not in his clinical practice office. (See id. ¶¶ 7, 9).

Fiedler followed the EIC documenting procedure outlined above for Patient X, one of his patients. (Id. ¶ 10). Patient X's EIC reflected four (4) straws with the following numbers of embryos per straw: straw #1, two (2) embryos; straw #2, two (2) embryos; straw #3, four (4) embryos; and straw #4, four (4) embryos. (Id.) In September of 2011, by reason of personal medical disability, Fiedler closed both his ambulatory surgical center and his laboratory. (Id. ¶ 11). Following the closure of Fiedler's practice, Patient X desired to commence uterine transfer. (See id. ¶ 12). Patient X's frozen embryos were shipped from Fiedler's laboratory to Shady Grove on April 5, 2012. (See id.) Shady Grove's laboratory logged Patient X's embryos in a manner and quantity identical to Patient X's EIC. (See id. ¶ 13). Shady Grove attempted two unsuccessful transfers using the embryos in straws 1, 2, and 3 in

5

September and December of 2012, respectively. (Id. ¶¶ 13-22). Its records reveal that the straws contained quantities consistent with Fiedler's EIC. (See id.)

In April of 2012, Shady Grove learned and informed Fiedler that the straw quantities identified on Patient X's EIC were inconsistent with those documented on her IOR. (Id. ¶ 23). According to the complaint, the IOR incorrectly identified the number of straws and embryos as follows: straw #1, two (2) embryos; straw #2, two (2) embryos; straw #3, two (2) embryos; straw #4, two (2) embryos; and straw #5, four (4) embryos. (Id.) Fiedler discussed the issue with his embryologist who explained the error, and Fiedler in turn explained the mistake to Shady Grove. (See id. ¶ 25). Shady Grove "expressed understanding . . . [and] raised no concern." (Id. ¶ 26). Thereafter, Shady Grove advised Patient X "that there was only an issue with paperwork that was nothing serious." (Id.) Shady Grove continues to store and preserve the embryos contained in straw #4 for future transfer. (Id.)

In May of 2012, Fiedler's disability caused him to close the remainder of his practice. (Id. ¶ 27). In connection with this closure, Fiedler transferred his practice and charts to Shady Grove. (Id.) Shady Grove raised no concerns at that time regarding labeling, inventory, or transfer of the embryos cryopreserved in Fiedler's laboratory. (Id.) In July of 2013, Fiedler learned that Shady Grove misrepresented to multiple patients that Fiedler mislabeled several of his patient's embryos, and, for that reason, no embryos cryopreserved in Fiedler's laboratory would be used for uterine transfer. (Id. ¶ 28). Fiedler avers that this representation is false because Patient X is the only patient whose records were erroneously documented and

Patient X's embryos were not mislabeled. (Id. ¶ 29). Fiedler contends that Shady Grove's misrepresentations are not only defamatory to him but also may result in the unnecessary and irreparable destruction of embryos, at emotional and financial cost to his former patients. (Id. ¶ 33).

## IV.   Discussion

Shady Grove's motion tests the sufficiency of both of Fiedler's tort claims. In response to Shady Grove's motion, Fiedler abandons his claim for intentional or fraudulent misrepresentation, conceding that such claims are not available based on statements made to third parties. (Doc. 25 at 1). See Deangelo Bros. v. Platte River Ins. Co., No. 09-1198, 2010 U.S. Dist. LEXIS 64324, at *27-28 (E.D. Pa. June 29, 2010) ("[T]he false representation must be intended to cause the party bringing the claim to act, not merely to influence a third party to act in a detrimental manner."); Westwood-Booth v. Davy-Loewy Ltd., No. 97-7539, 1999 U.S. Dist. LEXIS 4809, at *4 (E.D. Pa. Apr. 13, 1999) ("A plaintiff cannot state a claim for fraud based on a third party's reliance on a misrepresentation, even when it was made to influence the third party foreseeably to act in a manner detrimental to the plaintiff.")). Accordingly, the court will deem Fiedler's claim in Count I to be withdrawn and focus its analysis solely on Fiedler's claim for defamation.

In Count II, Fiedler contends that Shady Grove defamed him by falsely communicating to his patients and to "at least one healthcare provider and/or facility" that Fiedler had mislabeled his patients' embryos, lowering his reputation as a reproductive specialist in the community. (Doc. 20 ¶ 44). Shady Grove offers a

three-fold challenge to Fiedler's claim. Shady Grove argues: first, that the common interest privilege bars any defamation claim; second, that Fiedler suffered no harm from the alleged publication; and third, that Fiedler fails to state facts supporting his claim. (Doc. 24 at 13-20). For the reasons that follow, the court concludes that Fiedler fails to identify a false statement with any sufficient particularity. As such, the court will dismiss Fiedler's defamation claim without prejudice to the filing of an amended complaint curing the deficiencies articulated *infra*.

To prevail on a claim for defamation, Fiedler must allege facts which, if proven, establish the following: (1) the defamatory character of the communication; (2) its publication by Shady Grove; (3) its application to Fiedler; (4) understanding by the recipient of its defamatory meaning; (5) understanding by the recipient of it as intended to be applied to Fiedler; (6) special harm resulting to Fiedler from its publication; and (7) abuse of a conditionally privileged occasion. See 42 PA. CONS. STAT. § 8343(a). Defamation plaintiffs must identify the communication at issue, including both its source and its substance. See, e.g., Maynard v. Sugarloaf Twp., No. 06-0845, 2012 U.S. Dist. LEXIS 116845, at *9 (M.D. Pa. Aug. 20, 2012) (Kane, J.) (dismissing claim when plaintiff failed to satisfy "obligation to put forth evidence that a defamatory statement was made" which "includes putting forth evidence that a defamatory statement was made on a particular date"); Turk v. Salisbury Behavioral Health, Inc., No. 09-6181, 2010 U.S. Dist. LEXIS 41640, at *10-12 (E.D. Pa. Apr. 27, 2010) (dismissing claim when plaintiff did not "identify the substance" of the statements, or "state the circumstances under which they were allegedly

8

made"); see also 42 PA. CONS. STAT. § 8343(a)(2) (requiring defamation plaintiff to prove that statement was published by the defendant).

Shady Grove argues that Fiedler fails to plead the most basic of these elements. Shady Grove asserts that Fiedler's conclusory allegations—referring to "communications" but failing to identify the same—are plainly inadequate to satisfy federal pleading requirements or the Pennsylvania defamation statute. (Doc. 24 at 18-19). Specifically, Shady Grove contends that Fiedler fails to allege "where or how the statement was made at all, and he does not allege when the statement was made." (Doc. 24 at 18). The court is constrained to agree.

The following are the sole facts that can be ascertained from Fiedler's complaint: that sometime prior to July of 2013, some unidentified representative of Shady Grove misrepresented to "multiple patients" and to at least one unidentified healthcare provider that Fiedler had "mislabeled several other of his patient's embryos." (See Doc. 20 ¶ 28). This "allegation" is plainly insufficient to establish defamation liability or to put Shady Grove on notice of the precise claim against it. Fiedler's complaint fails to identify with any degree of specificity the substance and circumstances of the representations at issue. See, e.g., People's State Bank of Wyalusing, PA v. Wellsburg, No. 10-cv-0433, 2010 U.S. Dist. LEXIS 125369, at *9-10 (M.D. Pa. Nov. 29, 2010) (Caputo, J.) (dismissing counterclaim when defendants "have not alleged to *whom* words were spoken, *where* they were spoken, or *when* they were spoken" and holding such "bare allegations do not meet even the liberal notice-pleading requirements of the Federal Rules") (emphasis in original); Turk,

9

2010 U.S. Dist. LEXIS 41640, at *10-12 (dismissing claim when plaintiff alleged that defendants "besmirched and defamed him" and made "false statements . . . concerning his job performance" but did "not identify the substance of the alleged defamatory statements, or state the circumstances under which they were allegedly made"); Joyce v. Alti Am., Inc., No. 00-5420, 2001 U.S. Dist. LEXIS 17432, at *6-11 (E.D. Pa. Sept. 27, 2001) (dismissing defamation claim when plaintiff sufficiently alleged which defendants made the statements but "failed to specifically identify what alleged defamatory statements were made").  The same deficiencies identified by the courts in Wellsburg, Turk, and Joyce are fatal to Fiedler's defamation claim in its current state.

    Fiedler does not respond directly to the case law cited by Shady Grove in its motion and brief.  Instead, Fiedler relies on Emekekwue v. Offor, No. 11-1747, 2012 U.S. Dist. LEXIS 67636 (M.D. Pa. May 15, 2012) (Rambo, J.) for the proposition that discovery is necessary to resolve any perceived pleading deficiencies.  (Doc. 25 at 10-11).  Fiedler contends broadly that his "claim for defamation is not proper for dismissal at this stage of the litigation."  (Id. at 11).  Emekekwue is immediately distinguishable, and its language taken out of context by Fiedler.  In that case, the plaintiff specifically identified allegedly defamatory statements made in an email, and the court concluded that his claim should survive the defendant's Rule 12 motion.  See Emekekwue, 2012 U.S. Dist. LEXIS 67636, at *12-13.  Turning to the defendant's privilege defense, the court observed that plaintiff's allegations were sufficient to establish the defendant's "abuse of a conditionally privileged occasion."

Id. at *15 (citing 42 PA. CONS. STAT. § 8343(a)(7)). The court merely noted in dicta that discovery "is likely necessary" to *ultimately* resolve issues of privilege. Id. To the extent that Fiedler perceives Emekekwue as relieving him of his most basic pleading burden, the court rejects his argument. The court will grant Shady Grove's motion to dismiss Count II for failure to state a claim for which relief could be granted.[3]

## V.     Conclusion

For all of the foregoing reasons, the court will grant Shady Grove's motion (Doc. 23) as fully explained herein. An appropriate order follows.

 /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     July 16, 2014

---

[3] The court does not address Shady Grove's privilege and damages arguments at this time. Rather, the court will address these arguments as necessary after Fiedler has had the opportunity to amend his complaint in response to Shady Grove's arguments and the court's memorandum.